UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KENDRICK T. GOLATT, SR. | CIVIL ACTION NO. 23-0857 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| CADDO PARISH SCHOOL BOARD | MAGISTRATE JUDGE McCLUSKY |

### MEMORANDUM RULING

The Plaintiff, Kendrick T. Golatt, Sr., filed a complaint against his former employers, the Caddo Parish School Board ("Caddo Parish") and Kim Pendleton, alleging discrimination and retaliation. R. Doc. 1. The Court has already dismissed all claims against Pendleton. R. Doc. 24, at 1. Now before the Court is a motion for partial summary judgment filed by Caddo Parish. R. Doc. 37. Although Golatt, proceeding *pro se*, failed to file an opposition, the Court has considered the merits of Caddo Parish's pending motion. *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule."). For the reasons below, the motion is **GRANTED**.

### Background

Around August 2016, Golatt began work for Caddo Parish as a substitute teacher at Southwood High School ("Southwood"). Pls.' Depo. 18, R. Doc. 37-3. In the following years, Golatt continued to receive training and certifications, eventually becoming a part-time teacher and school disciplinarian. *Id.* at 20, 24. He held those

1

roles when Caddo Parish named Pendleton the principal of Southwood in late 2019. *Id.* at 24-25. Not long after Pendleton became Southwood's principal, the COVID-19 pandemic forced closure of the school. *See id.* at 25.

When in-person classes resumed at Southwood in August 2020, Pendleton "changed some things up." Pls.' Depo. 24-25. Pendleton named Golatt the head coach of the girls' basketball team and removed his disciplinary responsibilities. *Id.* at 28-29. As a coach, Pendleton allowed Golatt to wear casual clothing, including sweatpants. *Id.* at 171. In the ensuing years, Pendleton made several vulgar comments to Golatt, including ones about his genitals and attire.

In fall 2020, Golatt entered the band director's office for a meeting where he found Pendleton already seated inside. Pls.' Depo. 154. Golatt had been wearing sweatpants, and as he walked inside, Pendleton said: "I can see your little shrimp through your pants." *Id.* Pendleton laughed, and Golatt then tried to pull down his shirt to cover himself. R. Doc. 37-3, at 43.

Around this time, in a separate incident, Golatt had a meeting with Pendleton in her office. R. Doc. 1-2, at 4. Pendleton asked Golatt if they were speaking as "Dr. Pendleton and Mr. Golatt" or "Kim and Kendrick" because "inquiring minds want to know how big [his penis] is." *Id.* Golatt felt uncomfortable at her question and changed the subject. *Id.*

After the 2020 school year, during a summer administrative meeting between Pendleton, Golatt, and others, they discussed who would have disciplinary duties for the following year. *See id.* Pendleton said that Golatt would not handle discipline

2

because she needs "men with big nuts [and a] strong penis to work in discipline and that's not [him] according to what I saw on camera." *Id.* Apparently Pendleton had been referring to an incident from the previous year where Golatt tried to stop a fight between students. *Id.* During the melee, one of the students struck Golatt in his genitals, leaving him doubled over and breathless. *Id.*

During the following school year, 2021-2022, Pendleton made another vulgar comment about Golatt's genitals. Golatt and another male teacher had been standing together when Pendleton told them that "she could see my dick through my pants[,] and it wouldn't [sic] be any dick swinging and to put my dick up." Pls.' Depo. 169. Pendleton then made the other teacher, but not Golatt, change his clothing because the other teacher's pants were more tightly fitted. *Id.* at 170.

In October 2021, Pendleton held a meeting with four coaches where she confronted them about an alleged rumor. Pendleton accused the coaches of having a group bet "…on who would fuck [the assistant principal] first." R. Doc. 1-2, at 5. Pendleton then "went around the room" asking the coaches if they were "trying to have sex with [the assistant principal." Pls.' Depo. 166. The coaches, including Golatt, denied the accusation. *Id.*

In January 2022, Golatt approved a social media post about an upcoming basketball game involving Southwood. R. Doc. 1-2, at 6. When a parent complained about the post, Pendleton confronted Golatt, and their meeting became heated. R. Doc. 37-3, at 48. Eventually, Pendleton told Golatt that he must be "mentally unstable and doing cocaine." *Id.* She then ordered him to visit with the employee

3

assistance program, or she would fire him. *Id.* Golatt did so, and within a few minutes of the visit, the counselor said, "he saw nothing wrong with me" and told him to "go back to my school." *Id.*

Another incident occurred in spring 2022 when Golatt had a meeting with Pendleton in her office. R. Doc. 1-2, at 7. During this meeting, Pendelton said that Golatt "must be eating [and] using [his] tongue real [sic] good on women because [he] surely don't [sic] have anything down there." *Id.* Once again, Golatt felt uncomfortable and changed the subject as Pendelton laughed. *Id.*

In August 2022, Pendleton pressured Golatt to hire a female staff member as his assistant coach of the girls' basketball team. Pls.' Depo. 95. When Golatt refused, Pendleton removed him from the head coach's position thereby taking away his coaching stipend. *Id.* No later than August 31, 2022, Golatt filed a sexual harassment complaint with Caddo Parish about Pendleton's vulgar behavior. *See* R. Doc. 1-2, at 1. In response, Caddo Parish reassigned Golatt to a different high school. R. Doc. 37-3, at 60. Quite understandably, Golatt protested the reassignment because he felt punished for someone else's conduct. Pls.' Depo. 125. Caddo Parish did not change its decision, and Golatt remained at the other high school until he resigned on July 31, 2023. R. Doc. 37-3, at 31.

## Standard

Federal Rule of Civil Procedure 56(a) requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the burden at

4

trial will rest on the nonmovant, the movant need not produce evidence to negate the elements of the nonmovant's case; rather, it need only point out the absence of supporting evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant satisfies its initial burden, the nonmovant must demonstrate a genuine dispute exists by "going beyond the pleadings" and "designating specific facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This burden requires more than metaphysical doubt, conclusory or unsubstantiated allegations, or a mere scintilla of evidence. *Id.*

## Analysis

Golatt brought one claim for sexual harassment and another for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*. He made a separate claim for discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12112(a). Caddo Parish has not challenged Golatt's Title VII retaliation claim.

### I. Sexual Harassment Claim

Under Title VII, harassment is "unlawful when it results in the employer 'discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…sex[.]" *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019). A violation of Title VII occurs when "…discrimination based on sex has created a hostile or abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To establish a hostile work environment claim, a plaintiff must prove he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013). Harassment only affects a term, condition, or privilege of employment when its "either severe or pervasive." *Id.* at 403.

In this case, Pendleton's alleged behavior was unquestionably vulgar, particularly in a school context. But her sexual comments occurred only six times in two years, and "such infrequent conduct is not 'pervasive' enough to sustain a hostile work environment claim." *Higgins v. Lufkin Industries, Inc.*, 633 F. App'x 229, 235 (5th Cir. 2015) (finding two comments in one year insufficient for a hostile work environment claim); *see also Shepherd v. Comptroller of Public Accounts of the State of Tex.*, 168 F.3d 871, 875 (5th Cir. 1999) (finding that four instances of inappropriate sexual remarks and several more instances of inappropriate touching over a two-year period were insufficient).

Similarly, although Pendleton's alleged behavior was inappropriate, it was not "severe" enough to support a hostile work environment claim. The United States Court of Appeals for the Fifth Circuit has held that "[a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment." *Lauderdale v. Tex. Dept. of Crim. Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007).

6

For example, in *Brandon v. Woodspring Suites Shreveport-Bossier City LLC*, the court held that a single incident altered the terms, conditions, or privileges of employment. No. 18-848, 2020 WL 1862148, at *4 (W.D. La. April 13, 2020). There, the plaintiff was sexually assaulted by a coworker when he grabbed her arm, tried to force her to touch his penis, attempted to kiss her, exposed his penis to her, and showed her a naked photograph of himself. *Id.*

Here, although repugnant, none of Pendleton's comments were severe enough to alter the conditions of Golatt's employment. Unlike *Brandon*, Golatt does not allege that Pendleton touched or attempted to touch him inappropriately, nor does Golatt allege that Pendleton tried to make him touch her. Pendleton's comments were explicit and crude, but courts have regularly found similar remarks do not prevent the person "from succeeding in the workplace." *Shepherd*, 168 F.3d at 874 ("[Defendant's] harassing actions, although offensive, are not the type of extreme conduct that would prevent [Plaintiff] from succeeding in the workplace."); *see, e.g.*, *Walker v. SBC Services, Inc.*, 375 F. Supp. 2d 524, 539-40 (N.D. Tex. 2005) (finding that five instances of "sexually explicit, crude and vulgar comments" in two years were not severe enough to create a hostile work environment). The Court finds that no genuine dispute of material fact exists that Pendleton and Caddo Parish altered a term, condition, or privilege of Golatt's employment, and therefore, his sexual harassment claim under Title VII must fail.

## II. Disability Discrimination Claim

The Americans with Disabilities Act ("ADA") prohibits covered employers from discriminating against a qualified individual because of that individual's disability. 42 U.S.C. § 12112(a). To prevail, the plaintiff must first establish a prima facie case of discrimination. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). The plaintiff must demonstrate that (1) he is disabled within the meaning of the ADA; (2) he is qualified and able to perform the essential functions of his job; and (3) his employer's adverse employment action was based on his disability. *Id.*

In his complaint, Golatt alleged that his employers regarded him as disabled when Pendelton accused him of being using cocaine and being mentally unstable. R. Doc. 37-3, at 48. However, an erroneous perception of illegal drug use qualifies as a disability only if the employer regarded the perceived drug use as an impairment. *See Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 479 (5th Cir. 2023) ("Determining whether a plaintiff has a disability requires an individual assessment of the impact of the impairment on an individual's major life activities."); *see also Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 860 (5th Cir. 1999) (explaining in a pre-ADAA decision how "even a plaintiff who suffers from…alcoholism or drug addiction…must demonstrate that the condition substantially limits…his ability to perform a major life function."); *Bailey v. Real Time Staffing Servs., Inc.*, 927 F. Supp. 2d 490, 500 (W.D. Tenn. 2012) ("an erroneous belief about drug use will only be a qualifying disability if the employer regarded the perceived drug use as an impairment…").

Here, Golatt has provided enough evidence that Pendleton regarded his perceived drug use as an impairment to survive summary judgment. Specifically, Pendleton took issue with Golatt's decision to approve a social media post involving Southwood. Blaming his perceived cocaine use, Pendleton said that Golatt had a "mental issue" and had been "acting psycho." Pls.' Depo. 197-200. Pendleton then threatened to fire Golatt if he did not attend the employee assistance program. Pendleton's alleged comments and accompanying actions signal that she believed Golatt's perceived drug use impaired his mental function and ability to perform his job.

However, although Golatt can establish that Caddo Parish regarded him as disabled, he cannot prove that his employer took an adverse employment action based on that disability.[1] In his complaint, Golatt alleged that Pendleton referred him to the employee assistance program. R. Doc. 1. But referral to an employee assistance program does not constitute an adverse employment action. *See Wright v. Barr*, No. 17-1081, 2020 WL 13598000, at *26 (D.D.C. June 8, 2020) (collecting cases). As one court explained, requiring someone attend an employee assistance program does "not rise to the level of adverse employment actions" and amounts to no more than "petty slights or minor annoyances." *Robinson v. Fulton County, Ga.*, No. 05-2250, 2008 WL 78711, at *13 (N.D. Ga. Jan. 4, 2008); *see also Dunn v. City of Tallahassee*, No. 01-228, 2002 WL 1979128, at *9 (N.D. Fla. July 5, 2020) (holding that a "mandatory

---

[1] Caddo Parish does not dispute that Golatt had been qualified and capable of performing his duties as a teacher and coach. *See* R. Doc. 37-2, at 10.

9

referral to the employee assistance program" does not "rise[] to the level of adverse employment action.").

In this case, the Court finds that Golatt's mandatory referral to the employee assistance programs does not constitute an adverse employment action. Golatt has not alleged any negative consequences accompanied his program referral other than the minor inconvenience of time. In fact, Golatt himself testified that the referral was no more than a trivial annoyance, explaining that the program's counselor "advised me only after speaking with me a few minutes that he saw nothing wrong with me [and to] go back to my school." R. Doc. 37-3. Therefore, without an adverse employment action, Golatt's discrimination claim under the ADA fails.

## Conclusion

For the foregoing reasons, the Defendant's motion for partial summary judgment is **GRANTED**, and the Plaintiff's discrimination claims under Title VII and the ADA are dismissed. Only the Plaintiff's Title VII retaliation claim survives.

**DONE AND SIGNED** at Shreveport, Louisiana, this 9th day of February, 2026.

                                                **ALEXANDER C. VAN HOOK**
                                                **UNITED STATES DISTRICT JUDGE**